## CIRCUIT COURT OF BALTIMORE CITY.

Filed July 17, 1905.

THE CHARLES SIMON'S SONS COMPANY ET AL.
VS.
THE MARYLAND TELEPHONE AND TELEGRAPH COMPANY OF BALTIMORE CITY.

*Wm. S. Bryan, Jr., Leon E. Greenbaum, John S. J. Healy* and *J. W. Lord* for plaintiffs.
*Edgar H. Gans* and *Wm. L. Marbury* for defendant.

HARLAN, C. J.—

The defendant in this case was incorporated under the name of the Writ-

ing Telegraph Company of Baltimore City on January 8, 1890. By an amendment of its charter made July 9th, 1895, its name was changed to the Home Telephone and Telegraph Company of Baltimore City; and on May 16th, 1899, by a further amendment of its charter it became entitled to its present name, The Maryland Telephone and Telegraph Company of Baltimore City.

It had no right to enter the streets of Baltimore City for the purpose of laying and stringing its wires or of planting poles to conduct its business, without the permission of the Mayor and City Council of Baltimore; and in 1896, it applied to the Mayor and City Council for this franchise. In 1896, Ordinance No. 110 was introduced in the City Council, was duly passed and was approved on July 1st, 1896, granting this permission; and Section 4 of that Ordinance reads as follows:

"And be it further enacted and ordained, that the rights and privileges hereby granted are granted subject to the following conditions, namely: That the prices to be charged by the said Home Telephone and Telegraph Company of Baltimore City, shall not be more than four dollars per month for telephones furnished to business offices, and not more than three dollars per month for telephones furnished at dwelling houses within the corporate limit of Baltimore City, and to the further express condition that all the rights and privileges hereby and herein granted shall cease and be forever forfeited in case the Home Telephone and Telegraph Company of Baltimore City shall be consolidated with any other telephone company in Baltimore City, unless the terms of the consolidation provide that the consolidated company shall not charge more than the above-mentioned rates for the use of its telephones."

At this time the only telephone company in Baltimore was the Chesapeake and Potomac Telephone Company, which later had two kinds of telephone service in operation, the grounded circuit service and the metallic circuit service. For the former the maximum charge was fixed by the Act of 1892, Chapter 387, at $6.50 per month for a single 'phone within the radius of two miles from the central exchange, and one dollar per month additional for every additional mile distant from said exchange. The latter was regarded as a special telephone equipment, for which the Act of 1894, Chapter 207, authorized special contracts to be made at such rates as should be agreed upon between the parties, and the rate charged by the Chesapeake and Potomac Telephone Company in 1896 for metallic circuit 'phones with single party wire and unlimited service was $125 per year.

Nothing was done in the telephone business by the defendant corporation until about 1895. During that year and down to July 1st, 1896, a number of advance contracts were taken under the then management, and these advance contracts showed that the telephone it was willing to furnish at the rates of $48 per annum for business 'phones and $36 per annum for residence 'phones was to be a metallic circuit 'phone, single party wire, unlimited service, equal in efficiency to the service then being rendered by the Chesapeake and Potomac Telephone Company, for which the latter was charging $125 per annum. This intention of the Home Telephone Company, as the corporation was then called, was also shown by a number of documents introduced in evidence, such as advertisements and circulars. It was also shown in evidence that the representatives of the Home Telephone and Telegraph Company stated before the Council Committee to which Ordinance No. 110 was referred, that the intention of the company was to furnish a metallic circuit telephone with unlimited service and efficiency equal to that then provided by the Chesapeake and Potomac Telephone Company at the rate of $125 per year.

After the passage of Ordinance No. 110, the defendant formally accepted its terms and began the construction of its plant. The telephone equipment supplied to subscribers at the rates named in the ordinance was a metallic circuit service, single party wire, with unlimited service, connected with all of its subscribers, although the number of such subscribers was at first comparatively small. The only difference between the character of the equipment supplied then and now is, that then the metallic circuit was by iron whereas it is now by copper wires, and the electric energy was then supplied by the trunking or magneto system, whereas it is now supplied by the central energy

system; and as the business grew in later years, enlarged and improved switch boards were established in the central exchanges to care for it in an "efficient and up-to-date" way. The central energy system was established in 1900. This system has increased the convenience of subscribers in the use of the telephone, but is also more economical to the company. After the central energy system was introduced the company continued to supply telephone service at the ordinance rates until January, 1903, when it put in force a schedule of rates in excess of those prescribed by Ordinance No. 110.

By January 1st, 1903, the number of its telephones in use had increased to about seven thousand. At the present time the number of subscribers is about eight thousand five hundred. On July 1st, 1902, when the number of subscribers was about six thousand five hundred, the first notification of a change of rates had been given. In the spring of 1902 the defendant had introduced in the City Council an ordinance to repeal the rates fixed by Ordinance No. 110, but subsequently withdrew the same on the advice of counsel that the company had the right to increase its rates, and that an ordinance was not necessary. In October, 1902, the company had issued a circular justifying its increase of rates, on the ground that the telephone equipment which it was required by Ordinance No. 110 to furnish for the rates therein named was "the grounded circuit system," and that it was not compelled to furnish for those rates the improved (and more expensive) type of equipment then in use; known as the metallic circuit central energy long distance equipment.

The bill in the present case was filed on January 30th, 1903, by four subscribers of the Maryland Telephone and Telegraph Company to business telephones, citizens of Baltimore, on behalf of themselves and others similarly situated. Since the filing of the bill fourteen other subscribers have been made parties plaintiff by petition. The bill alleges substantially: (1) The charter rights of the company, and the franchise granted to it in July, 1896, by Ordinance No. 110. (2) That under the true construction of this ordinance it was the duty of the defendant to furnish to the plaintiff and other residents of Baltimore having places of business therein a telephone equipment such as they then enjoyed, 'over a single wire, metallic circuit with unlimited service' at $48 per annum. (3) That the defendant company in disregard of this duty, was exacting a rate of $72 per annum for such business telephones. (4) That the plaintiffs, in order to obtain the telephone service of said company, had been compelled to execute contracts at the $72 rate. (5) That the defendant was threatening to remove the telephones of the plaintiffs unless they continued to pay for the same at this unlawful rate. The bill prays substantially: (1) That it may be deemed to be the duty of the company to furnish telephones, such as the plaintiffs have, at the ordinance rates, (2) That its action in exacting a higher rate than $48 be declared illegal and in violation of the ordinance as to the excess of $24, and that the contracts executed at the higher rate of $72 be rescinded in this respect. (3) That the company be enjoined from exacting higher rates than those prescribed by the ordinance, from refusing to furnish telephones at the ordinance rates, and from removing plaintiffs' telephones so long as they tender and pay the ordinance rates. (4) For general relief."

To this bill a demurrer was interposed on the following grounds:

(1) That the bill is multifarious.

(2) That none of the plaintiffs have any standing in a court of equity to ask for *any* relief upon the alleged contract between the defendant and the Mayor and City Council of Baltimore, set forth in said bill.

(3) That no contract is stated in said bill whereby the defendant is obliged to furnish the plaintiffs or any of them telephones and telegraph service of any kind described in said bill.

(4) That by a proper construction of said Ordinance No. 110, stated in said bill, the defendant is not obliged to furnish telephones and telephone service of *the kind described in said bill* to plaintiffs or any of them at the rates claimed in said bill.

(5) That the plaintiffs have not stated in said bill such a case as entitles them or any of them to any relief in equity against this defendant.

(6) And for other causes to be assigned at the hearing.

The lower court sustained this demurrer and dismissed the bill. But on

appeal the Court of Appeals reversed this action, and in the opinion decided as follows:

1. "When the appellee applied to the Mayor and City Council of Baltimore for the right to use the subways and ducts of the city for its corporate purposes, that there was nothing in the Act of 1892, Ch. 387, or in the Act of 1894, Ch. 207, to prevent it (the appellee) from making the contract which the appellants insist that it did make, to furnish the citizens of Baltimore with telephone service at the rates specified in Ordinance No. 110, and the kind and description of equipment and service that was to be supplied at the said rates we must look for, not in the law but in the contract that was made."

2. "To determine this question the court is entitled to be advised of all the circumstances under which and the conditions with reference to which the contract was entered into."

3. "That the ordinance here (No. 110) which constitutes the contract between the City of Baltimore and the appellee in its fourth section where provision is made for furnishing to the citizens telephone service at the rate of $48 for business places and $36 per annum for dwellings, uses the word 'telephone' generally, and does not specify any particular description of service to be furnished."

4. "The most natural and reasonable construction to be given or meaning to be imputed to the word 'telephone' as here used is the telephone with all improvements, equipments and appliances essential in its operation to make it most effective in use."

5. "If, as the appellee contends, the word is to have a restricted meaning, or a particular meaning, the court should be informed of the circumstances and conditions which will make this appear."

6. "That the ordinance in question must have intended that the service to be furnished by the appellee should be effective in use." And as between the grounded circuit service, which appellee insists in the one it was obligated to furnish, and the metallic circuit service, which appellants contend was the one which they were entitled to have, conditions at the time of the passage of the ordinance might have been such, as affecting the former, that it was no longer effective, and "this

contention could not be settled upon demurrer, but must be by facts brought to the knowledge of the court by evidence."

7. "That the design of the ordinance was the public good, to secure for persons of moderate means this "great boon," and to the business community at large "the great advantage" of a cheap telephone service upon the faith of the appellee's having "declared itself ready and willing to supply such service at rates very much lower than those 'then prevailing.'"

8. That the Mayor and City Council of Baltimore, under the authority conferred upon it by the legislature, "to regulate the use of the streets, lanes and alleys in said city by railway or other tracks, gas or other pipes, telegraph, telephone, electric light or other wires and pipes in, under, over or upon the same," etc., had the power to enact Ordinance No. 110, and to impose upon the appellee the condition expressed in Section 4 as respects the rates of charges therein specified for telephone service.

9. That this condition was not an attempt by the Mayor and City Council to exercise the function of the legislature, which alone can regulate the compensation of a public service corporation.

10. That "the obligations imposed by the ordinance were imposed by the appellee upon itself by its own voluntary action in accepting the ordinance."

11. That "it cannot be here objected by the appellee that the regulation contained in the ordinance here in question as to the rates of charge was not a reasonable one. The time to have urged such a consideration was before it accepted the ordinance and availed of the privileges acquired thereunder."

12. That "the ordinance imposed upon the appellee a duty to the general public which the members thereof have a right to enforce against it in conditions which will show that it is violating that duty."

13. That "the appellants have rights under Ordinance No. 110 which they are entitled to enforce in this proceeding."

14. That the bill is not multifarious.

The case being remanded, defendant put in its answer and the case has come on for hearing upon testimony taken in open court. The plaintiffs

contend that they have established all the material facts entitling them to the relief prayed under the rulings of the Court of Appeals. The defendant insists that the real relief sought by the plaintiffs is to get telephone service from the defendant company, of the kind they are now enjoying, at the rates of $48 for business telephones and $36 per annum for residence 'phones; that while they are asking for this relief by means of injunction, the effect of the injunction, if granted, will operate as a specific enforcement of the contract, and that all the principles which apply to the case of a bill for specific performance apply with equal force to this bill; and its learned counsel invoke two principles of the rules governing specific enforcement of contracts. *A.* That the contract to be enforced must be definite and certain in its terms and free from ambiguity, *B.* That a court of equity will not enforce a contract which is inequitable or unjust, specific enforcement resting in the sound discretion of the court, to be exercised upon all the circumstances of each case.

Under *A* their argument, briefly stated, is that Court of Appeals sent this case back in order that the court might determine "the kind and description of telephone service" the defendant was bound to furnish at the ordinance rates, by hearing evidence of the facts and circumstances under which the contract was made; that the plaintiffs are asking that the defendant be compelled to give them a service such as they are now enjoying; that this embraces, a metallic circuit telephone, unlimited service, a single party wire, connection with all the subscribers of the company, amounting now to eight thousand, five hundred, in number, and with all suburban towns and pay stations as now established; and that all of these details cannot by any principle of construction be involved out of the word "telephone" as used in Ordinance No. 110 even when taken in connection with the evidence of the facts and circumstances attending its passage. With reference to this contention it seems sufficient to recall that the Court of Appeals, as above set out, have said as to the use of the word "telephone" in Ordinance No. 110: "The most natural and reasonable construction to be given, or meaning to be imputed, to the word telephone as here used *is the telephone with all improve-*ments, *equipments and appliance essential in its operation to make it most effective in use;"* and that they imposed upon the defendant the burden of showing a restricted meaning of these words, "if, as the appellee contends, the word is to have a restricted meaning, or a particular meaning, the court should be informed of the circumstances and conditions which will make this appear." The court also added: "The ordinance in question must have intended that the service to be furnished by the appellee should be effective in use."

I see nothing in the evidence offered which leads to the conclusion that any other meaning should be attached to the word "telephone" in Ordinance No. 110 than that which the Court of Appeals has said would be its natural and reasonable meaning, or that such changes and improvements in the telephone equipment furnished to subscribers as have been adopted and put in use by the defendant, and are embraced in the equipment now enjoyed by plaintiffs, have not been adopted for purposes of economy or for making their telephones "effective" in use.

So far as the connection with suburban towns and with pay stations outside of Baltimore are concerned, it is alleged in the bill and admitted by the answer that the defendant has the right to, and does charge for these connections, and they are not furnished or required to be furnished at the ordinance rates; and so far as the increase in the beneficial use of the telephone to subscribers is concerned growing out of the increase in the number of subscribers within the limits of Baltimore City, this increase must be held to have been in the necessary contemplation of all parties at the time of the passage of Ordinance No. 110.

I see nothing, therefore, in the contention of the defendant under principle *A* which would prevent the plaintiffs from having the relief asked.

Coming to principle *B*, the defendant contends that if this contract is enforced three things will necessarily follow:

(1) The plaintiffs will not get the relief asked. (2) The bonds of the company will have their value destroyed. (3) The company will be driven out of business and the entire purpose of Ordinance No. 110 frustrated.

It is said that the evidence shows the service plaintiffs are now asking costs more than $48 per 'phone; that the additional cost of service is so great that if it is granted the company would be losing $70,000 per annum; that the immediate result would be putting the company into the hands of a receiver and their ultimately going out of business.

In this connection attention is called to the fact that out of 8,500 subscribers, only eighteen are parties to this bill, and that all the remainder, except about eight hundred, who are standing on their rights, have voluntarily entered into contracts with the company to take the new service at rates of $72 and $60, showing that they believe the new contracts fair, and that there is no great interest which they see requiring that a decree should be enforced, and appeal is made to the equitable doctrine as stated in Mc-Cutcheon Heirs vs. Raleigh, 76 S. W. Reporter, page 51: "If to enforce specifically the agreement would do one party great injury and the other comparatively little good, so that the result would be more spiteful than just, the chancellor will not require its execution."

There are two considerations which weigh with me in not adopting the conclusion to which the argument leads. In the first place I am not satisfied, after a careful consideration of the evidence, that the disastrous, destructive and untoward results mentioned will necessarily follow a decree in favor of the plaintiffs, and in the second place, the argument proceeds upon the assumption that the ordinance rates of $48 and $36 are unreasonable; but the Court of Appeals have already said in this very case, that "it cannot be here objected by the company that the regulation contained in the ordinance in question as to rates of charge was not a reasonable one. The time to have urged such a consideration was before it accepted the ordinance and availed of the privileges it acquired thereunder." I cannot attach to this language in the opinion, notwithstanding the able argument of counsel for the defendant company, any other meaning than a deliberate ruling that alleged unreasonableness of the ordinance rates and resulting hardship to the company afford no ground for denying to even so few a number of plaintiffs as *four* the relief

sought by their bill, upon proof of the other material facts therein alleged.

For the purposes of this opinion, I have assumed without deciding that the defendant's counsel are right in their contention that the principles applicable to a bill for specific performance are applicable to this case, although the soundness of this contention is denied by the plaintiffs.

Upon the evidence offered and under the rulings which the Court of Appeals have made, I am of opinion that the plaintiffs are entitled to relief substantially as prayed, and a decree will be signed accordingly.